UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 18-cv-81600-MARRA/MATTHEWMAN

AARON MOHANLAL,

     Plaintiff,

vs.

THE GEO GROUP, INC.; WARDEN
CLAUDE MAYE; PATRICIA LOFTIS;
ETOSHA SLAUGHTER; K GRANTLEY;
J. FREDRICK; J. TAYLOR; JEAN
RICHEMOND and N. FINISSE,

     Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' CORRECTED CONSOLIDATED MOTIONS FOR SUMMARY JUDGMENT [DE 89]

THIS CAUSE is before the Court upon Defendants, Claude Maye ("Warden Maye"), Patricia Loftis, Etosha Slaughter, Eugene Grantlin [1], and Jermaine Federick [2] (collectively, "Defendants") Corrected Consolidated Motions for Summary Judgment ("Motion") [DE 89]. The Motion was referred to the undersigned by the Honorable Kenneth A. Marra, United States District Judge. [DE 113]. The Motion is fully briefed. *See* DEs 102, 103, 106, and 107.

### I. Introduction

Plaintiff, Aaron Mohanlal ("Plaintiff"), a state inmate, filed a *pro se* civil rights Amended Complaint pursuant to 42 U.S.C. § 1983. [DE 25]. Plaintiff sued multiple defendants, but only Defendants Claude Maye, Patricia Loftis, Etosha Slaughter, Eugene Grantlin, and Jermaine Federick remain in the case. *See* DEs 43, 58, and 112. Additionally, several of Plaintiff's claims have been dismissed. *See* DEs 54, 58.

---

[1] Plaintiff improperly refers to this individual as "Grantley" throughout this case.
[2] Plaintiff improperly refers to this individual as "Fredrick" throughout this case.

As is explained in detail below, the undersigned finds that Defendants' Motion should be granted in part and denied in part.

## II. Standard of Review

### A.   Law Pertaining to §1983

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) defendant(s) deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, Plaintiff must further allege and establish an affirmative causal connection between the Defendant's conduct and the constitutional deprivation. *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986).

### B. Law Pertaining to Summary Judgment

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The moving party bears the initial responsibility of demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex*, 477 U.S. at 323.

In reviewing a motion for summary judgment, this Court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Ctrs Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)). Thus, a district court "may not weigh conflicting evidence or make credibility determinations" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat*, 658 F.3d at 1307).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (relying upon *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Similarly, "an issue is material if it may affect the outcome of the suit under governing law." *Id.* (relying upon *Anderson*, 477 U.S. at 248). In sum, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, courts should deny summary judgment." *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010).

In the summary judgment context, courts must still construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002). Notwithstanding, if the nonmoving party "fails to properly address another party's assertion of fact as required by Rule 56(c)" courts may consider the fact undisputed for purposes of the motion and grant summary judgment if the facts in the record—including those considered undisputed—illustrate that the movant is entitled to judgment in its favor. Fed. R. Civ. P. 56(e)(2).

### III. Facts

### A. Plaintiff's Version of Events

Plaintiff's version of events is taken primarily from his Amended Complaint, which he cites throughout his Statement of Material Facts [DE 103]. Plaintiff is an inmate in the custody of the Florida Department of Corrections ("FDOC"). [DE 25, p. 3]. He was housed at South Bay Correctional Facility ("South Bay") during the events he alleges in his Amended Complaint. *Id.* On February 7, 2017, Plaintiff went to the Institutional Classification Team ("ICT") for a job assignment and was assigned to work in food service. *Id.* at p. 7. Plaintiff suffered from and/or had been diagnosed with, several health conditions. *Id.* at pp. 19-20. On February 8, 2017, Defendant Loftis, the food service manager at South Bay, ordered Plaintiff to sign liability waiver papers. *Id.* at p. 7. While the papers stated that Plaintiff was trained in food service safety procedures, he lacked such training. *Id.* Loftis threatened to write a disciplinary report ("DR") if Plaintiff did not sign the papers. *Id.* at p. 8. On the same day, Plaintiff grieved Loftis's threat to Defendant Warden Maye. *Id.*

On February 9, 2017, Plaintiff informed Defendant Slaughter, the classification officer, of: (1) his "illegal" assignment to food service despite his medical conditions; and (2) the "negative/vindictive" manner in which Loftis had treated him. [DE 25, p. 8]. On February 10, 2017, Plaintiff filed a grievance against food service alleging sanitation rules' violations. *Id.* at pp. 8-9. On the same date, Plaintiff was assigned to the "pot room." *Id.* at p. 9. Plaintiff informed Defendant Loftis that he could not work in food service due to his medical conditions, and Defendant Loftis responded: "I got something for you for writing up food service. I don't like you." *Id.* On the same date, Plaintiff was taken to confinement for allegedly threatening Defendant Loftis. *Id.* He was assigned to "M-1 dorm/confinement cell #M1205." *Id.*

4

In February 2017, Plaintiff told Defendants Maye, Slaughter, Grantlin, and Federick that Defendant Loftis was retaliating against him for using grievance procedures. [DE 25, pp. 9-10]. Between February 10, 2017 and April 12, 2017, Plaintiff complained to Defendants Maye, Slaughter, Wilson, Grantlin, and Federick that the "call panic button/2-way speaker system ['panic button']" in his cell was not working, and they assured him that the panic button would be repaired. *Id.* at p. 10.

On February 22, 2017, Plaintiff attended a disciplinary report ("DR") hearing, but he was not given advance notice in writing of the charges against him. [DE 25, p. 10]. At the hearing, he gave an oral and written statement and requested staff assistance with collecting evidence and witnesses for his defense. *Id.* The ruling was withheld pending further investigation. *Id.* at pp. 10-11. Sometime before March 14, 2017, Defendants Maye, Slaughter, Wilson, Grantlin, and Federick allegedly "failed to give Plaintiff staff assistance to locate the requested witnesses and evidence to present at the DR hearing." *Id.* at pp. 11, 31. On March 14, 2017, at the DR hearing, "Plaintiff did not receive an opportunity to call witnesses or present evidence of his actual innocence." *Id.* at p. 11. Defendants Slaughter and Wilson told him that the requested witnesses and evidence could not be located and found him guilty based on only Defendant Loftis's written statement, which had been fabricated to punish him. *Id.* Plaintiff did not receive an oral or written basis for the decision. *Id.* at p. 12. He lost 30 days' good-time credit. *Id.*

From February to April 2017, "[P]laintiff observed several altercations/fights between inmates housed in the same cell" in M-1 dorm. [DE 25, p. 25]. Officers did not immediately come to stop the attacks. *Id.* When they did arrive, Defendants Grantlin and Federick would stand outside the cell door and watch, only entering the cell after the fights had stopped. *Id.* On April 5, 2017, former defendant Jean Richemond, an inmate at South Bay, was moved into Plaintiff's cell for

violently attacking another inmate. *Id.* Richemond told Plaintiff that he: (1) was a leader in a Haitian gang; (2) robbed and stole; (3) possessed cell phones; (4) sold drugs; (5) carried cash to pay off officers; (6) attacked older inmates; (7) was in prison for murder; and (8) had been designated "housing level-4" and "psych level-3." *Id.* at p. 13.

On several occasions between April 5, 2017 and April 12, 2017, Plaintiff told Defendants Maye, Slaughter, Wilson, Grantley, and Fredrick about Richemond's threats and violent tendencies. [DE 25, p. 13]. They ignored him and refused to move him to another cell. *Id.* From March 20, 2017 to April 12, 2017, Plaintiff told Defendants Maye, Slaughter, Wilson, Grantley, and Fredrick that the lights and panic button in his cell did not work. *Id.* at pp. 13-14. They assured him that they would be fixed and told him to stop complaining and writing grievances. *Id.* at p. 14. They also assured him that his legal work and boxes would be given to him when he was transferred. *Id.*

On April 13, 2017, an inmate told Plaintiff that Richemond wanted to attack him because Plaintiff had snitched on him. [DE 25, p. 14]. Plaintiff immediately communicated this threat to Defendants Grantlin and Federick. *Id.* They laughed. *Id.* On the same date, Richemond attacked Plaintiff while he slept. *Id.* Richemond grabbed Plaintiff around his neck and started choking him, removing Plaintiff from the bed. *Id.* Plaintiff ran to the cell door and started banging on it, screaming, and pressing the panic button. *Id.* Richemond proceeded to beat, kick, and choke Plaintiff, dragging him around the cell like a rag doll. *Id.* Further, Richemond "sexually abused/raped" Plaintiff as he screamed for help. *Id.* at pp. 14-15. The assault left Plaintiff with lacerations, bruises, and abrasions to several body parts. *Id.* at p. 15. Plaintiff also had headaches, dizziness, and pain all over his body. *Id.* at p. 16. Plaintiff received pain pills and was scheduled to see a doctor. *Id.*

During the attack, Defendants Grantlin and Federick were on duty. [DE 25, p. 15]. They were aware of the attack because: (1) Plaintiff was banging on the cell door and screaming; and (2) they were looking at the cell during the attack. *Id.* However, they failed to intervene and waited outside the cell. *Id.* After the attack, Defendant Grantlin moved Plaintiff to a different cell in the same wing. *Id.* at p. 16.

Between April 13, 2017 and May 7, 2017, as they made their rounds in confinement, Plaintiff notified Defendants Maye, Slaughter, Wilson, Grantley, and Fredrick that he needed medical care for the injuries sustained from the attack. [DE 25, p. 17]. During essentially the same period, Plaintiff made sick-call requests to "medical," which went unanswered. *Id.* On May 8, 2017, Plaintiff was transferred from South Bay to Okeechobee Correctional Institution ("OCI"), which he characterizes as "Florida's 11th most violent prison." *Id.* Prior to his transfer, he told Defendants Wilson, Slaughter, Grantlin, and Federick that he needed all of his legal boxes. *Id.* Though they ignored him, the property officer said that the boxes would be forwarded to OCI. *Id.*

Between May 10, 2017 and February 13, 2018, Plaintiff complained about the failure of South Bay officials to forward all of his legal boxes. [DE 25, pp. 17-18]. On March 23, 2018, Plaintiff received a grievance response stating that, according to South Bay officials, there were no legal boxes at South Bay. *Id.* at p. 18. Plaintiff alleges that not having his legal boxes has prejudiced his ability to litigate civil and criminal cases. *Id.* He alleged that his "motion to strike summary judgment" was denied in a case "due to lack of evidence to refute the motion." *Id.* Furthermore, he had to appeal the denial of a state postconviction motion without trial transcripts and evidence. *Id.* at pp. 18-19. Additionally, he is "running out of time" to file a § 2254 petition in the Southern District of Florida and is hindered from doing so because "most evidence and copies of his prior state petitions were in his legal boxes." *Id.* at p. 19.

Plaintiff has filed copies of his grievances and appeals in these proceedings. [DE 103].

## B. Defendants' Version of Events

Plaintiff was assigned to food service on February 7, 2017, over his objections alleging that he was medically unfit to work in the kitchen, and Defendant Loftis was the Food Service Supervisor who oversaw the operations of the South Bay Correctional Facility ("SBCF") kitchen. [Loftis Aff. ¶ 2, DE 88-1]. Plaintiff refused training and refused to work. *Id.* at ¶ 3. Further, Plaintiff refused to sign the training packet. *Id.* Defendant Loftis took Plaintiff to the washroom and showed him what he needed to do in the washroom. *Id.* Plaintiff refused to work and claimed that he was not medically cleared. *Id.* Defendant Loftis subsequently called the medical department and was informed that Plaintiff's medical claim was not verified. *Id.*

At one point during her rounds on February 10, 2017, Plaintiff stated vulgar things to Defendant Loftis and threated her with the statement of: "You know I'm in prison for sexual battery and abusing a female!" [Loftis Aff. ¶ 4, DE 88-1]. Defendant Loftis stated to Plaintiff, "[t]hat was a threat." *Id.* Defendant Loftis notified the shift supervisor of the incident and wrote a disciplinary report. *Id.* Plaintiff was placed in administrative confinement pending disciplinary team action. *Id.*; *see also* Disciplinary Report, DE 88-2; Slaughter Aff. ¶ 3, DE 88-3. After his disciplinary hearing was continued so that SBCF staff could locate and interview Plaintiff's witnesses, Plaintiff was found guilty on March 14, 2017, for his spoken threat against Defendant Loftis based on her written statement. [Slaughter Aff. ¶¶ 4-5; Discipline Hearing Report at p. 1, DE 88-4]. Plaintiff lost 30 days of good-time credit. [Slaughter Aff. ¶ 5, DE 88-3; Discipline Hearing Report at p. 2, DE 88-4]. Plaintiff was given notice of the verbal threat charge against him on February 20, 2017. [Slaughter Aff. ¶ 4, DE 88-3; Discipline Hearing Report at p. 7, DE 88-4]. Plaintiff acknowledged delivery of these charges with his signature on that date. [Slaughter Aff.

¶ 4, DE 88-3; Discipline Hearing Report at p. 2, DE 88-4]. Plaintiff also wrote a sworn statement and general affidavit in which he disputed Defendant Loftis's assertion that he threatened her. [Slaughter Aff. ¶ 4, DE 88-3; Discipline Hearing Report at pp. 8-9, DE 88-4].

Plaintiff's disciplinary hearing was delayed from February 21, 2017, until March 14, 2017, so that Plaintiff's requested witnesses could be interviewed. [Slaughter Aff. ¶ 4, DE 88-3; Discipline Hearing Report at p. 1, DE 88-4]. Defendant Slaughter was the chair of Plaintiff's disciplinary hearing. [Slaughter Aff. ¶ 2, DE 88-3; Discipline Hearing Report at p. 2, DE 88-4]. Officer Latoya Allen oversaw interviewing Plaintiff's witnesses. [Slaughter Aff. ¶ 5, DE 88-3]. Dr. Phil Hanson, one of Plaintiff's requested witnesses and a psychologist at SBCF, was interviewed by Officer Allen. [Slaughter Aff. ¶ 5, DE 88-3; Discipline Hearing Report at p. 10, DE 88-4]. Dr. Hanson stated that the Plaintiff was upset about having to work in food service. *Id.* Plaintiff's second requested witness, Lieutenant McKinnon, was also interviewed by Officer Allen. *Id.* Lt. McKinnon stated that Plaintiff had a problem with working in food service and with the way he was being trained. *Id.* Plaintiff's third requested witness, a sergeant, was unknown by the name that Plaintiff gave and could not be interviewed. *Id.* All the witness statements were deemed irrelevant to whether Plaintiff made the spoken threat. *Id.* As written in the Disciplinary Hearing Report, Plaintiff was found guilty of the spoken threat due to Defendant Loftis's written statement. [Slaughter Aff. ¶ 5, DE 88-3, and DE 88-4, p. 3]. Plaintiff signed the Disciplinary Report which stated the basis for the finding of guilt. *Id.*

Due to the spoken threat finding, Defendant Slaughter called Defendant Loftis and asked her if she felt safe if Plaintiff went back to general population. [Loftis Aff. ¶ 5, DE 88-1; Slaughter Aff. ¶ 6, DE 88-3]. Defendant Loftis responded that she did not feel safe from the Plaintiff due to the nature of Plaintiff's threat against her. *Id.* As a result, Defendant Slaughter recommended to

9

SBCF's Institutional Classification Team ("ICT") that Plaintiff be transferred from SBCF since an inmate made a threat against a current SBCF staff member and that staff member felt threatened with this inmate still at SBCF. [Slaughter Aff. ¶ 6, DE 88-3]. Slaughter is not a member of ICT. [Slaughter Aff. ¶ 7, DE 88-3].

ICT does the special review of an inmate and makes the ultimate recommendation to the Florida Department of Corrections ("FDOC") as to whether an inmate should be transferred. [Slaughter Aff. ¶ 7, DE 88-3]. As SBCF is operated by The GEO Group, Inc. ("GEO") and not FDOC, all SBCF can do is recommend Plaintiff's transfer. *Id.* FDOC ultimately decides whether an inmate can be transferred. *Id.* Further, SBCF has no power to dictate to FDOC where an inmate is to be transferred. *Id.* This is solely an FDOC decision. *Id.* In the instant case, ICT made the ultimate recommendation to FDOC for Plaintiff to be transferred on March 28, 2017, and FDOC granted SBCF's request on April 12, 2017. *Id.* As Plaintiff could not be returned to general population due to the threat against Defendant Loftis, Plaintiff had to remain in confinement until FDOC picked up the Plaintiff to transport him to his next prison. *Id.*

Warden Claude Maye was the warden at SBCF all at times relevant to this lawsuit. [Maye Aff. ¶ 2, DE 88-8]. He was not directly involved in decisions regarding placing inmates in confinement and he did not chair any disciplinary hearings. *Id.* Warden Maye was not involved in any decision to place Plaintiff in confinement and he has no personal recollection of any disciplinary hearing grievance or appeal involving the Plaintiff. [Maye Aff. ¶ 3, DE 88-8]. Often, Warden Maye would assign an appropriate official to respond to any grievance or appeal involving an inmate, and Warden Maye would sign off on the response if appropriate. *Id.* Further, Warden Maye was not part of the ICT and was not involved in the decision to recommend Plaintiff's transfer. *Id.*

Sgt. Grantlin was not involved in any decision to place Plaintiff in confinement and was in no way involved in his disciplinary hearing. [Grantlin Aff. ¶ 3, DE 88-9]. The only interaction that Sgt. Grantlin had with the Plaintiff was while he was housed in confinement. *Id.* Sgt. Grantlin has never been a member of ICT and was not involved in any decision to recommend that Plaintiff be transferred from SBCF. *Id.* Furthermore, Sgt. Grantlin had no conversation with anybody regarding any recommendation to transfer the Plaintiff to another institution. *Id.*

Defendants dispute that Plaintiff ever got into a fight with his cellmate.

## IV. *Heck* Challenge

Defendants argue that summary judgment in their favor is warranted because the following claims are barred by the U.S. Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994): (1) Plaintiff's due process claims against Warden Maye and Slaughter; (2) Plaintiff's retaliation claim against Warden Maye, Slaughter, and Loftis; and (3) Plaintiff's retaliatory transfer claim against Warden Maye, Slaughter, and Grantlin.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that, before a plaintiff may proceed with a § 1983 action "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must prove that the conviction or sentence had already been invalidated. If the plaintiff fails to demonstrate that the conviction or sentence has been reversed, expunged, or otherwise invalidated, any claim must be dismissed if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487.

In a later decision, the Supreme Court announced that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no

matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).

*Heck* also applies to a disciplinary conviction. *Edwards v. Balisok,* 520 U.S. 641, 646-48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Roberts v. Wilson,* 259 F. App'x 226, 229 (11th Cir. 2007). However, *Heck* does not apply when the action does not implicate the validity of a conviction or the duration of the confinement. *Muhammad v. Close*, 540 U.S. 749, 751-52, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004).

(a) Plaintiff's due process claims against Warden Maye and Slaughter

Defendants argue that "it is undisputed that Plaintiff was found guilty at his complained of disciplinary hearing and it is undisputed that this finding of guilt was not overturned on appeal or invalidated in any way before pursuing this civil rights action. [DE 88 ¶¶ 7, 17, 42, 44, and 46]." [DE 89, p. 6]. Therefore, pursuant to *Heck* and its progeny, "Plaintiff's claims that he was denied due process at his disciplinary hearing are barred." *Id.* In response, Plaintiff contends that *Heck* is not categorically applicable to all lawsuits challenging prison disciplinary actions and that Defendants dispute Plaintiff's claim that he was denied due process pertaining to disciplinary hearing. [DE 102, pp. 4-5]. In reply, Defendants assert that Plaintiff misunderstands the evidence, that there is no issue of material fact, and, moreover, that the finding of guilt was not overturned on appeal or invalidated in any way before Plaintiff pursued this civil rights action. [DE 106, pp. 2-3]. Thus, the due process claim is *Heck* barred. *Id.* at p. 3.

Defendants concede that Plaintiff did lose gain time as a result of his conviction. [DE 106, p. 2]. Thus, there is no dispute that Plaintiff was deprived of a protected liberty interest. However, "a claim for damages that is related to a sentence or conviction that has not yet been reversed or

invalidated is not cognizable under 42 U.S.C. § 1983. *Heck*, 114 S. Ct. at 2372." *Lloyd v. Bell*, No. 4:16CV781-MW/CAS, 2017 WL 579942, at *2 (N.D. Fla. Jan. 26, 2017), *report and recommendation adopted,* No. 4:16CV781-MW/CAS, 2017 WL 562172 (N.D. Fla. Feb. 10, 2017); *see also Edwards v. Balisok*, 520 U.S. 641 (1997) (concluding that a claim for monetary damages resulting from defects in a prison disciplinary hearing which results in the loss of gain time credits is not cognizable under § 1983 until the disciplinary report is successfully overturned through habeas); *Schmidt v. Monroe Cty. Sheriff's Dep't*, No. 09-10043-CIV, 2009 WL 3698092, at *3 (S.D. Fla. Nov. 5, 2009) ("[I]nasmuch as the plaintiff seeks relief based on allegations of denial of due process, because he forfeited gain time, his claims are foreclosed by the landmark Supreme Court decision in the case of *Heck v. Humphrey,* 512 U.S. 477 (1994), and its progeny, and by *Edwards v. Balisok,* 520 U.S. 641 (1997)."); *Lovehe v. Paul*, No. 08-80940-CIV-MARRA, 2008 WL 11340054, at *3 (S.D. Fla. Sept. 18, 2008), *report and recommendation adopted,* No. 08-80940-CIV, 2008 WL 11340053 (S.D. Fla. Oct. 21, 2008). "The Eleventh Circuit has interpreted *Balisok* to foreclose all claims challenging a disciplinary proceeding unless they were purely procedural . . . ." *Whitfield v. Thompson*, 165 F. Supp. 3d 1227, 1244 (S.D. Fla. 2016) (internal citation omitted) (citing *Harden v. Pataki,* 320 F.3d 1289, 1295 n. 9 (11th Cir. 2003)). "[F]ederal courts do not operate as appellate courts for prison disciplinary actions. Accordingly, plaintiff's claim that defendants violated his constitutional rights by filing the DRs or during the administrative hearing should be dismissed." *Leonard v. Scott*, No. 17-14248-CIV, 2018 WL 10797983, at *11 (S.D. Fla. Feb. 20, 2018), *report and recommendation adopted,* No. 2:17-CV-14248, 2018 WL 10797982 (S.D. Fla. Mar. 12, 2018).

Furthermore, to the extent Plaintiff seeks any form of monetary damages in this § 1983 suit, as stated above, "the district court must consider whether a judgment in favor of [P]laintiff

would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed." *Heck*, 512 U.S. at 487.

Here, there is absolutely no evidence that the disciplinary report was successfully reversed, invalidated, or overturned. As a result, Plaintiff is barred from bringing a § 1983 claim for damages pursuant to the Supreme Court's holding in *Heck*.

In sum, since Plaintiff's due process claims against Warden Maye and Defendant Slaughter are *Heck*-barred, summary judgment should be granted in Defendants' favor as to the "some evidence" and loss of good time credit claims. In light of the undersigned's determination, there is no need to analyze Defendants' "some evidence" or "due process protections" arguments, as they also revolve around the disciplinary hearing. These arguments are contained in Defendants' Motion in Sections (C)(1) and (C)(2). [DE 89, pp. 6-9]. However, in an abundance of caution, the Court will further analyze on the merits Plaintiff's due process claim based on *Sandin v. Conner*, 515 U.S. 472 (1995), as that specific due process claim is not as directly related to Plaintiff's disciplinary hearing.

#### (b) Plaintiff's retaliation claim against Warden Maye, Slaughter, and Loftis

According to Defendants, "Warden Maye, Slaughter, and Loftis are entitled to summary judgment on Plaintiff's claim that his disciplinary report was issued in retaliation for filing grievances as such claim is *Heck* barred." [DE 89, p. 11].

This case is factually similar to a recent opinion entered by the Honorable Lisette Reid, United States Magistrate Judge: *Nova v. Heron*, No. 19-21668-CV, 2020 WL 3512806, at *6–7 (S.D. Fla. June 4, 2020), *report and recommendation adopted,* No. 19-21668-CIV, 2020 WL 3510721 (S.D. Fla. June 29, 2020). In that opinion, the court explained that "*Heck* does not apply when the action does not implicate the validity of a conviction or the duration of the confinement."

*Id.* at *6 (citing *Muhammad v. Close*, 540 U.S. 749, 751-52, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004)). The court determined that *Heck* did not necessarily bar the plaintiff's claim because the plaintiff was not challenging the findings made in the disciplinary hearing, but instead was claiming that the disciplinary report was issued in retaliation for submitting a grievance about the attack he suffered. *Id.* The Court explained that, "[t]o that end, [the plaintiff's] claim does not attack the validity of his conviction. Still, it is true that the Defendants' initiated an investigation, and later issued a disciplinary report based on [the plaintiff's] false statements." *Id.*

The undersigned adopts Judge Reid's reasoning and similarly finds here that Plaintiff's retaliation claim against Warden Maye, Slaughter, and Loftis is not *Heck*-barred. Plaintiff is challenging the fact that the disciplinary report was issued in retaliation and not the actual findings made at the disciplinary hearing. As this is the only ground upon which Defendants moved for summary judgment for this claim, summary judgment should be denied as to the retaliation claim.

(c) Plaintiff's retaliatory transfer claim against Warden Maye, Slaughter, and Grantlin

The same *Heck* analysis applies to Plaintiff's retaliatory transfer claim. Plaintiff is not challenging the findings made in the disciplinary hearing, but rather the alleged retaliation perpetrated when Plaintiff was transferred to a different correctional institution. The retaliatory claim against Warden Maye, Slaughter, and Loftis is not *Heck*-barred.[3]

## V. Failure to Exhaust Administrative Remedies

Defendants argue that summary judgment in their favor is warranted because Plaintiff failed to exhaust his administrative remedies with respect to the following claims: (1) Plaintiff's failure to protect and deliberate indifference to serious medical needs claims against Warden

---

[3] However, the undersigned will further analyze whether summary judgment should be granted as to the retaliatory transfer on substantive grounds later in this Report and Recommendation.

Maye; (2) Plaintiff's deliberate indifference to serious medical needs claim against Slaughter; (3) Plaintiff's failure to protect and retaliatory transfer claims against Sgt. Grantlin; and (4) Plaintiff's failure to protect claim against Federick. [DE 89 at pp. 3-4].

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) requires "proper exhaustion of administrative remedies," and a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Thus, exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 740 (2001); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); *Parzyck v Prison Health Serv., Inc.*, 627 F.3d 1215, 1217 (11th Cir. 2010).

The Eleventh Circuit has also made clear that the exhaustion defense "is not ordinarily the proper subject for a summary judgment; instead it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). As applied here, although raised by Defendants in a motion for summary judgment, to the extent the Defendants seek dismissal for lack of exhaustion, it is being treated as a motion to dismiss, pursuant to Rule 12(b)(6), rather than as one brought under Rule 56.

Defendants argue Plaintiff is precluded from bringing his failure to protect and deliberate indifference to serious medical needs claims against Warden Maye, his deliberate indifference to serious medical needs claim against Slaughter, his failure to protect and retaliatory transfer claims against Sgt. Grantlin, and his failure to protect claim against Federick because he failed to include these allegations in any grievance appeal. [DE 89, pp. 17-19]. However, it is clear to the Court that Defendants' actual argument is not that Plaintiff failed to include allegations regarding his claims in the grievance appeals, but rather that, while Plaintiff did allege the specific conduct underlying the claims in his grievance appeals, he failed to name every applicable defendant in certain grievance appeals.

According to Plaintiff, his grievances were sufficiently specific. [DE 102, pp. 12-14]. He cites *Brown v. Sikes*, 212 F.3d 1205, 1207, 1208 (11th Cir. 2000), for the premise that the § 1997e(a) exhaustion requirement does not always prohibit a prisoner from suing any defendant other than those named in the administrative grievance the prisoner filed. *Id.* at p. 13. In reply, Defendants contend that "Plaintiff's argument that he could not reasonably provide the proper information in the grievance is rebutted by Plaintiff's own grievances where it is clear that he knew the names of each Defendant in this lawsuit." [DE 106, p. 5].

The Court has carefully reviewed Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment [DE 103] and the grievance appeals themselves [DE 25-1]. The Eleventh Circuit has held that a prisoner need only "identify all who are known to have injured him and to provide as much relevant information as reasonably possible in [his] administrative grievances." *Brown*, 212 F.3d at 1208 n.3; *see also Sherman v. Quest*, No. 18-60973-CIV, 2020 WL 6791100, at *6 (S.D. Fla. Nov. 19, 2020). The Court cannot make a definitive determination here, in light of the facts before it, whether Plaintiff was aware of the

actual names of the Defendants involved in the aggrieved conduct during—or only after—the grievance process. Therefore, the Court rejects Defendants' challenge under the PLRA and finds that the grievance appeals were sufficiently specific under the relevant case law.

### VI. Plaintiff's Due Process Claimed Based on *Sandin v. Conner*—Merits

*Sandin* held that an inmate has a liberty interest in freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. The *Sandin* court determined that mere confinement to disciplinary segregation was a type of discipline that should be expected by an inmate as an incident to his criminal sentence. *Id.* at 485. The Eleventh Circuit "has interpreted the Supreme Court's opinion as recognizing two instances or circumstances when an inmate is deprived of a liberty interest so as to require that he is entitled to due process: 1) when there is a change in his prison conditions that is so severe that it essentially 'exceeds the sentence imposed by the court,' and 2) when the state has consistently conferred a benefit on prisoners and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Young v. Rios*, No. 07-14277-CIV, 2009 WL 10699019, at *6 (S.D. Fla. July 21, 2009), *report and recommendation adopted*, No. 07-14277-CIV, 2009 WL 10699018 (S.D. Fla. Aug. 31, 2009), *aff'd*, 390 F. App'x 982 (11th Cir. 2010) (citing *Bass v. Perrin*, 170 F.3d 1312, 1318 (11 Cir. 1999)).

In their Motion, Defendants argue that "Plaintiff's continued confinement did not run afoul of the due process clause as Plaintiff's continued detention in confinement pending his transfer was done for security reasons." [DE 89, p. 9]. Defendants assert that, "due to Plaintiff's threat to Loftis and Loftis's fear of the Plaintiff, Plaintiff could not be sent back to general population and it was recommended that he be transferred." *Id.* at p. 10. FDOC then accepted SBCF's

18

recommendation. *Id.* Defendants further contend that, "as Plaintiff could not be returned to general population pending his transfer due to his threat to Loftis, Plaintiff had to remain in confinement until FDOC ultimately picked up the Plaintiff for transfer." *Id.* Defendants explain that this was in accordance with FDOC policy 601.215(5)(b) ("Housing a Special Review Inmate Who is Pending Transfer") which states that the "inmate designated as special review may be placed in administrative confinement or otherwise segregated to ensure the safety of all involved individuals and the secure operation of the facility pending the inmate's transfer." *Id.*

In response, Plaintiff asserts that his confinement in harsher conditions than those provided for the general population for 83 days is undisputed and that Defendants selectively chose to follow FDOC rules and procedures to "cover-up" and justify holding him illegally in confinement. [DE 102, pp. 8-9].

The Court has reviewed Patricia Loftis' Affidavit [DE 88-1], the relevant disciplinary report [DE 88-2], and Etosha Slaughter's Affidavit [DE 88-3]. It is undisputed that Plaintiff was placed in administrative confinement pending disciplinary team action. It is also undisputed that Plaintiff's placement in administrative confinement was permissible pursuant to FDOC policy 601.215(5)(b). Plaintiff's only evidence to support his response to Defendants' Motion is evidence that goes to the conditions of the administrative confinement itself. *See* DE 102, p. 8. Furthermore, Plaintiff's allegation that Defendants "are selectively choosing to follow FDOC rules and procedures to 'cover-up' and justify holding Plaintiff illegally in confinement for more than (83) days" [DE 102, p. 9] is not supported by any evidence whatsoever. Given the undisputed facts before the undersigned, it is clear that Plaintiff's period of disciplinary segregation punishment is neither "atypical" nor a "significant hardship" under the *Sandin* analysis. Summary judgment should be granted in favor of Defendants as to this claim.

### VII. Plaintiff's Retaliatory Transfer Claim—Merits

The First Amendment forbids prison officials from retaliating against inmates for filing grievances about the conditions of confinement. *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011). "To state a claim for retaliation, a prisoner must allege that '(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance].'" *Allen v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 836, 839-40 (11th Cir. 2014) (citing *O'Bryant*, 637 F.3d at 1212).

Here, Defendants assert that Warden Maye, Slaughter, and Sgt. Grantlin are entitled to summary judgment as to Plaintiff's retaliatory transfer claim because there is no causal connection between the transfer and the alleged protected activity and because Warden Maye and Sgt. Grantlin were not part of ICT and were not involved in whether to recommend that Plaintiff be transferred. [DE 89, p. 12]. According to Defendants, ICT made the recommendation to FDOC for Plaintiff to be transferred on March 28, 2017, and FDOC granted SBCF's request on April 12, 2017. *Id.* at p. 13. This was before he and his cellmate allegedly fought. *Id.* In response, Plaintiff contends that he has sufficiently alleged that "his continued grievance activity caused defendants to transfer him." [DE 102, p. 12].

The Court has carefully reviewed the retaliatory transfer claim in the Amended Complaint [DE 25, pp. 32-34]. Plaintiff does allege that Warden Maye, Slaughter, and Sgt. Grantlin transferred him after the fight with his cellmate. *Id.* at p. 32, ¶ 82. However, he also alleges that Warden Maye, Slaughter, and Sgt. Grantlin had knowledge prior to May 5, 2017, that he had made several different complaints about ADA violations, illegal confinement, being held in a cell with

a violent gang member, and several other issues. *Id.* at p. 33, ¶ 80. Therefore, it seems that Defendants have overly simplified Plaintiff's retaliatory transfer claim and that genuine issues of material fact remain regarding the causal connection.

However, Defendants' argument that Warden Maye and Sgt. Grantlin were not part of ICT and were not involved in whether to recommend that Plaintiff be transferred has merit. Defendants have provided Affidavits from Warden Maye and Sgt. Grantlin [DE 88-8, ¶ 3; DE 88-9, ¶ 3], which establish that neither was a member of ICT, had any involvement in any decision to transfer Plaintiff, or had any conversation regarding recommending Plaintiff's transfer. Plaintiff has provided no evidence to the contrary. Therefore, summary judgment should be granted as to Plaintiff's retaliatory transfer claim against Warden Maye and Sgt. Grantlin. Summary judgment should be denied as to Plaintiff's retaliatory transfer claim against Defendant Slaughter, and the claim should remain pending as to Defendant Slaughter.

### VII. Conclusion

Based upon the foregoing, it is recommended that

(1) Defendants' Corrected Consolidated Motions for Summary Judgment [DE 89] be **GRANTED IN PART and DENIED IN PART**.

(2) The Motion should be granted as to Plaintiff's due process claims (the "some evidence" claim, the loss of gain time credits, and the *Sandin v. Conner* claims) against Warden Maye and Slaughter.

(3) The Motion should be GRANTED as to Plaintiff's retaliatory transfer claim solely against Warden Maye and Sgt. Grantlin.

(4) The remainder of the Motion should be DENIED.

## <u>NOTICE OF RIGHT TO OBJECT</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Kenneth A. Marra. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of January, 2021.

WILLIAM MATTHEWMAN
United States District Judge

cc:     **Aaron Mohanlal**, *Pro Se*
        # L69345
        Okeechobee Correctional Institution
        Inmate Mail/Parcels
        3420 NE 168th Street
        Okeechobee, FL 34972